FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 21, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

GLENDA SARAI PEREZ DE
SIGUENZA; ALEXIS BLADIMIRA
SIGUENZA-PEREZ, a/k/a Alexis
Bladimir Siguenza Perez; JENNY
SIGUENZA-PEREZ,

     Petitioners,

v.

MERRICK B. GARLAND, United
States Attorney General,*

    Respondent.

No. 20-9543
(Petition for Review)

_____

**ORDER AND JUDGMENT**\*\*
_____

Before **HOLMES**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

This case involves requests for asylum and withholding of removal

by a mother and her son and daughter. To obtain relief, the three applicants

---

\*     We've substituted the name of the respondent. When this case began, William P. Barr was the United States Attorney General. The current Attorney General is Merrick B. Garland. Fed. R. App. P. 43(c)(2).

\*\*     This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

needed to prove a connection between their persecution and a particular social group. 8 U.S.C. §§ 1101(a)(42)(A), 1231(b)(3)(A). The Immigration Judge and Board of Immigration Appeals rejected the three applications, relying in part on the failure to prove this connection.

The mother and children petition for judicial review, arguing that the Board failed to consider relevant evidence. We disagree and deny the petitions for review.

**1.      Ms. Perez and her children flee El Salvador.**

Ms. Perez and her children lived in El Salvador, where they were tormented by gang members. The gang members repeatedly demanded money from Ms. Perez. In addition, one gang member wanted Ms. Perez's daughter (Jenny) to be his girlfriend. When she refused, she was harassed. Gang members also demanded money from Ms. Perez's son (Alexis) and twice stole his shoes.

The harassment peaked when gang members tore into Ms. Perez's house and told the family members to leave, threatening to kill them if they stayed. They did as they were told. But as they left, one gang member tried to kidnap Jenny. She got away.

After escaping the gang, the mother and her two children moved. Eventually, though, they received a threatening phone call. Fearing that the gang had figured out their new location, the family fled to the United States.

**2.  The family claim membership in three particular social groups.**

In seeking asylum and withholding of removal, each family member has sought to connect the persecution to membership in a particular social group.[1]

Ms. Perez identifies her group as "Salvadoran women and children unable to leave a family relationship." She bases this group on abuse in both childhood and adulthood. As a child, she was abused by her mother and uncle. As an adult, Ms. Perez was allegedly unable to leave her abusive husband.

Jenny identifies her group as "Salvadoran women unable to leave an imposed putative relationship with a gang member."

Alexis identifies his group as "an immediate family member of Jenny and Ms. Perez." Alexis ties his persecution to the gang's actions targeting his sister and mother.

The Immigration Judge and Board of Immigration Appeals rejected the applications, reasoning in part that the three alleged groups were not cognizable and the three applicants had failed to connect the persecution to their alleged groups.

---

[1]  The applicants initially claimed membership in other particular social groups, but their counsel later said that he was pursuing only one particular social group for each applicant. Oral Argument at 33:36–33:50.

3

**3.    The family has not shown that the BIA failed to consider relevant evidence connecting past or future persecution to a particular social group.**

We consider only the Board's reliance on a failure to prove a connection to a particular social group.[2] On this issue, the family needed to connect past or future persecution to membership in a particular social group. *See Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010) (asylum); *Uanreroro v. Gonzales*, 443 F.3d 1197, 1202 (10th Cir. 2006) (withholding of removal). Membership in this group must be a "central reason" for the persecution. *Orellana-Recinos v. Garland*, No. 19–9596, ___ F.3d ___, slip op. at 6 (10th Cir. Apr. 5, 2021) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)).

The family argues that the Board failed to consider all of their evidence connecting persecution to a particular social group. Although we often review the Board's factual findings for substantial evidence, *see Dallakoti* 619 F.3d at 1267, we do not do so here because the family has narrowed its challenge to the sufficiency of the Board's explanation. Oral Argument at 8:26–9:11; *see Farrar v. Raemisch*, 924 F.3d 1126, 1130 n.4 (10th Cir. 2019) (accepting a party's oral waiver of an argument even

---

[2]    This connection is required for asylum or withholding of removal. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1231 (b)(3)(A). At oral argument, counsel for the family agreed that without a connection between the persecution and a particular social group, we would not need to address the family's other arguments. Oral Argument at 5:52–7:33.

though the party's brief had included this argument). In its briefs, however, the family had based this challenge on the Board's failure to consider evidence connecting the persecution to membership in particular social groups.

For example, Ms. Perez has pointed to evidence related to the abuse that she suffered as a child. That evidence reflected pervasive violence against Salvadoran women and children. But Ms. Perez didn't claim a particular social group of "Salvadoran women and children." Her alleged group was narrower, consisting of Salvadoran women and children unable to leave a family relationship. The additional evidence of pervasive violence related generally to violence against women and children, not women and children powerless to leave family relationships. The Board could thus decline to rely on this evidence when considering a potential connection between the persecution and Ms. Perez's inability to leave a family relationship.

Ms. Perez argues alternatively that the Board should have considered other possible groupings.[3] In the administrative proceedings, Ms. Perez was free to urge membership in other particular social groups. But she didn't. As a result, we cannot fault the Board for failing to consider other

---

[3] Ms. Perez makes this argument when defending the validity of her particular social group. But we address this argument because it could affect the relevance of the evidence connecting her membership in a particular social group and the persecution.

5

possible groupings. *See Rivera-Barrientos v. Holder*, 666 F.3d 641, 647 n.2 (10th Cir. 2012) (declining to consider a group characteristic that had not been raised before the Immigration Judge and Board); *accord Kanagu v. Holder*, 781 F.3d 912, 917 (8th Cir. 2015) ("Insofar as [the petitioner] attempts to further narrow his group on appeal, we lack jurisdiction to consider arguments not clearly made before the agency.")

Ms. Perez and her two children also argue that the Board failed to consider evidence of the gang's motives. But the Board's opinion shows consideration of this evidence: The Board concluded that the family had not shown clear error in the Immigration Judge's factual finding, reasoning that the gang members' harassment reflected a mindset of criminality and a desire to extort money and control territory rather than an intent to target the family's membership in a particular group. Board's Opinion at 4. Ms. Perez and the two children give no reason to doubt that the Board considered all of the evidence in upholding the Immigration Judge's factual finding.

Lastly, the family argues that the Board conflated the validity of a particular social group and the existence of a connection. We disagree because the Board separately analyzed these two issues:

> Even assuming that the respondents established membership in a cognizable particular social group . . . , they have not demonstrated that a protected ground was or will be one central reason for past or future harm in El Salvador.

Board's Opinion at 4. This explanation shows that the Board separately considered the distinct inquiries involving recognition of a particular social group and its connection to the persecution.

* * *

The Board properly considered the relevant evidence and concluded that the persecution had not been connected to membership in a particular social group. So we deny the petitions for review.

Entered for the Court


Robert E. Bacharach
Circuit Judge